Case number 203918 Seaman Corporation v. Edmond Flaherty. Oral argument not to exceed 15 minutes per side. Mr. Posner, you may proceed for the appellant. Thank you. Good morning, your honors. May it please this honorable court. My name is David Posner with the law firms Ashen and Rich. It's my privilege to be appearing before you today representing the appellant Edmond Flaherty. I believe he's listening in. It's pretty early where he lives out in California. So let me tell you about California. But before I do, I'd like to reserve three minutes for rebuttal. California was the purpose for the employment agreement in this case. Without California, there would have been no employment for Mr. Flaherty to roofing products in California, and to build a sales team in California to do so. Even though he was living in Arizona? Was it the beginning of the contract? He was living in Arizona, your honor. He had just moved from California to Arizona. And when there were discussions about the job with Seaman Corporation, it was all about California. They wanted him in the California market to build a sales team in California. And that's what he did. That's the place where he lived for over 13 years and worked in the state whose interests will be most affected by resolution of the dispute over the restrictive covenants and the employment agreement. But for the substantial performance of the employment agreement in California, there was no job and thus no employment agreement with Seaman for Mr. Flaherty. Because of this, whether the choice of law provision in paragraph 11.1 of the agreement was effective or not, the district court erred in holding that Ohio rather than California law applies to the dispute over the employment agreements restrictive covenants, the non-compete, non-solicitation and confidentiality restrictions. Does your rule mean that for every single employee of the company, unless they actually do business in Ohio, that they're never governed by this Ohio provision in the contract? Yeah, the way it's written, your honor, is the individual must have lived in Ohio at some point in order to have moved. Where does it say that? Well, the language in the employment agreement says that the agreement is made in Ohio's to be construed and interpreted in accordance with the laws of the state of Ohio, irrespective of whether employee moves from Ohio. So in order to give effect to the moves from language, Mr. Flaherty or any employee must have lived in Ohio at some point in time for that choice of law to be effective. Yeah, I sort of read that the way the district court did, I think a little bit, which is it's just meant to be inclusive. So it covers you, whether you live in Ohio or whether you don't live in Ohio. Yeah. Well, whether the choice of law provision in that paragraph was effective or not, the district court erred in holding that Ohio rather than California law applies. And even if Ohio law applies, the district court misapplied it because it issued an overbroad injunction that bars Mr. Flaherty from working even in a non competitive, non roofing role for any company that has both roofing and other non competitive lines of business. The injunction is contrary to Ohio law that requires restrictive covenants to prohibit only competition that is unfair, meaning the restrictive covenants can only be enforced to the extent necessary to protect the employer's legitimate interests. Otherwise, such covenants are unlawful under Ohio law because they overreach to prohibit fair competition. Seaman has no legitimate interest in barring Mr Flaherty from working in a non roofing role for a new diversified employer that has lines of business that are both competitive and non competitive with seaman. So could excuse me, could the district court's injunction bar Mr Flaherty from working for seaman? Well, yes, your honor. He should be allowed to work for any other company that is that has non competitive lines of business with seaman, and that includes seaplast. We presented evidence to the district court that Mr Flaherty is prepared to and ready to and see classes ready to have him work in another division of the company where he would be selling products that are applied to the ground, not roofing products purely. What about the feature of Mr Flaherty having, uh, apparently taken confidential information with him when he went and and provided it to seaplast? Uh, shouldn't that impact on the scope of the injunction? Vis a vis seaplast? Well, your honor, there there is evidence in the record that that suggests Mr Flaherty did take take some information information related to his commissions, for example, so he could figure out if he was paid correctly. These are disputed issues, but regardless, the injunction is prospective looking and Mr Flaherty is only going to be products that are applied to the ground. And so there really is no interest that seaman has in prohibiting him from working in that line of business, even under the inevitable disclosure doctrine, which the Ohio Supreme Court hasn't even officially adopted. Um, there has to be a substantially similar position in order for the, uh, inevitable disclosure doctrine to apply. And so here he would not be working in a substantially similar position with seaplast, and so therefore inevitable disclosure on a broad based injunction that would prohibit him from working, uh, in in a capacity in a non roofing role would be unlawful. So to what extent did you raise this non roofing role argument below? Yeah, your honor, it was. It was raised with the restraining order, and there was evidence presented during the course of the injunction hearing that Mr Flaherty also would work for seaplast in a division that was non roofing. That was the argument presented in connection with the preliminary injunction as opposed to the DRO. Uh, it was. It was mentioned in the record that he would be working for seaplast in a non working role. So that's to say there was something the court might have ruled, might have looked at in in evaluating the scope of the preliminary injunction, but it wasn't an argument that you made in the context of the preliminary injunction. Is that right? Well, she, the district court set it in her order that Mr Flaherty could work for, you know, non competitive, uh, lines of business or non competitive companies. But then at the same time, I'm sorry, what's the problem? Well, the problem is that the problem is that that despite saying that he could work in a non roofing role, the order itself actually prohibits him from doing that for seaplast or any other that goes. That goes to my question as to whether it was presented to the district court. The fact that the district court was aware of something that could have used if you had made the argument isn't the same as whether you made the argument. I'm just asking whether you made the argument doesn't mean necessarily you lose. Yeah, but you didn't make the argument or you did. Well, I, you know, a we made the argument in the motion. You make the argument when you say you made the argument. Where did you make the argument as opposed to including a statement of fact stuff on the basis of which you could have made the I'm not sure I understand the question or you can say 10 facts and not make an argument based on those facts. It's possible for a lawyer to do that. Is that what you did here? Or did you actually make an argument based on those facts? You say, I guess I made the arguments. Here are the facts I referred. Yeah, I believe it was part of the closing argument. Your honor. I see. Yes. So what was the question is if we have if we uphold the injunction, isn't this something that can be worked through as the court has the case on remand before a case is finally resolved? Well, I don't I don't think it would be appropriate on on remand, your honor, because this is an issue of law that that this court can decide and therefore vacate the injunction. Well, if you didn't preserve, let's say you didn't. Let's say we thought you didn't preserve it fully. Isn't it something that you could still raise with the district court in terms of additional proceedings or final injunction? I believe we could. I believe we could. Yes. If we were to apply California law, would that apply to more than the non compete argument? I don't believe so. Your honor. It applies to the the restrictive covenants in the employment agreement. It applies to the non compete non solicitation and overbroad confidentiality restrictions. So California law would prohibit all of that under your interpretation? Yes, that's what section 16 600 of the California Business and Professions Code provides. I'd like to address if I could section 187 to be uh, of the restatement of conflict of laws. California law applies to this dispute under that section of the restatement. Ohio law regarding the enforceability of restrictive employment covenants is contrary to fundamental policy of California embodied in section 16 600. Ohio law disfavors restraints on trade but still enforces restrictive covenants that are deemed reasonable. On the other hand, section 16 600 absolutely voids restrictive covenants like those in the party's employment agreement. There's irreconcilable conflict. California would be the state of the applicable law under the rule of section 1 88 of the restatement. California has the most significant relationship to the transaction in the parties, and it's why the party's relationship in the employment agreement existed. California has the materially greater interest in this dispute greater than Ohio. Under section 1 87, location of performance is a primary consideration in determining which state may have a materially greater interest. As the court noted in Stone Surgical, the place of performance and location of the subject matter of non competition restrictions are the place where the employee is restricted from engaging in certain activities. Here, California is where Mr. Flaherty substantially performed the work under the employment agreement and where semen operated and enjoyed the benefits of that work for over 13 years. California is the state where Mr. Flaherty intends to work now and in the future, and California is the state where the performance of the restricted covenants. Mr. Posner, could I ask a question fires? Yes, question before your time expires. Uh, this is an appeal from a preliminary injunction. Is there any relevance to a discussion of tortious interference with contract in which you just asked for damages? Yeah, I think under the facts of this case, your honor, there there is no clear and convincing evidence on certain elements of the tortious interference claim, and therefore there is no basis. It actually was an abusive discretion for the court to enter an injunction that may have related to tortious interference. I don't see how it related to it at all. That's what I'm asking. Yes, I agree with restraining. Thank you. I see my time's expired. Thank you. You'll have your time for rebuttal. Um, Mr Funk, is it? Yes. Yes, Mr Funk. Thank you, Your Honor. May it please the court, uh, Stephen Funk of the law firm of Red Swan and on behalf of Kelly Human Corp. I think what plaintiffs or appellants arguments fail to appreciate is that the district court in this case made a series of factual finding that largely rejected much of Mr Flaherty's testimony and found that he acted in faith. An appellant's brief does not challenge any of the district court's factual findings based upon a clear error standard of review, which means, as we pointed out in our brief, that the court should accept all of the district court's factual findings as true in determining whether to affirm the preliminary injunction. And we think this is fatal to Flaherty's appeal because the district court in this case made a series of very important factual findings as it related to the reasonableness of enforcing the non-competition agreement. First, the district court found that Tsipras and Seaman were direct competitors in the roofing membrane market and that Seaman therefore had a legitimate interest in protecting and ensuring that one of their top sales managers did not work in it for a direct competitor in any capacity. The district court also found that Mr Flaherty demonstrated an eagerness, even before he started working for Tsipras, to share his intimate knowledge of Seaman's pricing, customer, and product information to aid Tsipras in any manner that he could to solicit Seaman's customers and to misappropriate business opportunities. And the district court found that he knew what he was doing was wrong. And then thirdly, could you address the questions that Judge Rogers asked your friend on the other side about this potentiality that he would work in a non-competitive line of business? Yeah. One, whether that's just factually whether you think that's true, and two, whether you think that was raised below? And if so, at what point? Yes. So let me just address the raised below issue first. The transcript speaks for itself. Mr. Flaherty testified at the preliminary injunction hearing that he intended to work as the California regional sales market for all products for Tsipras. In fact, we asked him, including KEE, PDC roofing products, and he said yes. So they never made that argument relating to the motion to modify in the context of preliminary injunction hearing. And I think Judge Rogers asked Mr. Posner, and he's pointed to the closing argument. I'd encourage the court to read that closing argument. They do not make that argument in the closing argument. The only thing they asked for is that it be limited, that there be no injunction, and that it simply be a restriction on disclosure of trade secret. There's no argument about him working in a different capacity. So we do not think that that was preserved for appeal. But in any event, we're entitled to have the injunction enforced in accordance with the plain terms of the covenant not to feed. And that bars him from working for a competitor. You know, in this case is a classic example. Even before he started working as a sales manager, he's already feeding them information that he has intimate knowledge of Demon's business and giving it to them so that others working for Tsipras can actually use it and take advantage of it. So you're assuming, as I understand it, that Ohio law applies. If California law applied, I know you don't believe that, but if California law applied, would the result be different? No, it would not, Your Honor. We pointed out in our briefs that they're misstating California law on that question. There's a California Supreme Court decision that's incited and quoted from other decisions in which the courts have said that it is permissible to enforce a covenant not to compete in a situation where you're trying to prevent the disclosure of trade secrets. And here we've got a number of interests that we're seeking to advance, but certainly one of those is to prevent him from sharing his intimate knowledge of Demon's business. You know, this was a high-level manager, had direct access to all kinds of confidential information. He worked there for 14 years. So they certainly have an interest in ensuring that he doesn't work for a direct competitor in any capacity. And, you know, the other point I was about to make is that the district court found that this would not impose a hardship on Mr. Flaherty because he, in fact, had negotiated a financial package with CIPLAS in which he guaranteed that he would be paid $240,000 even if Demon was successful in enforcing the non-competition agreement. And that was a major point to the district court because the district court found that Mr. Flaherty had misled the court at the TRO hearing because he argued that he would be destitute and lose his health insurance if the court granted a TRO. And so the district court, in many respects, used that in finding that he lacked credibility. Can I ask you the inverse of what I asked your friend on the other side? You know, by his reading of the agreement, it seemed like it gutted it quite a bit in the sense that it would only apply to employees who, I guess, live and work exclusively in Ohio. But I'm trying to figure out how muscular your reading is. Is there any example of any employee who wouldn't be covered by the agreement? Is there any fact circumstance where Ohio law wouldn't apply? No, your honor. There wouldn't be any circumstance. I mean, the language is not ambiguous. It's very clear. It says that, quote, the agreement must be construed and interpreted in accordance with the laws of the state of Ohio. There is no other law that's referenced. In fact, the language that Mr. Posner is relying on, the language says irrespective of whether the employee moves from Ohio. So what that means is that it doesn't matter where the person resides or if they move. It's irrespective. Except if you wanted to have that meaning, the language would have been irrespective of whether employee lives in Ohio. Then I think your position would be clear that the first clause says the agreements to be construed and interpreted in accordance with laws of the state of Ohio. And if we had the hypo irrespective of whether the employee lives in Ohio, then it's clear it doesn't really matter where the employee lives. But this language is very peculiar. It says irrespective of whether employee moves from Ohio, suggesting that the employee to be covered has to have lived in Ohio and then moved somewhere else or lived in Ohio and stayed living in Ohio. Well, I think the irrespective, Your Honor, to answer that question, I think that the irrespective means it doesn't matter. So it's not intended to be a matter whether he moves from Ohio. It doesn't say it doesn't matter whether he lives in Ohio. That's right, Your Honor. But it's not intended to limit the scope of the provision. In other words, it is just because it doesn't say irrespective of every potential eventuality doesn't mean that it to that Ohio law doesn't apply. In other words, irrespective says that fact, if somebody lived in Ohio, moved from Ohio, it doesn't matter if they move. But it doesn't intend to make it a condition precedent that it applies only if the employee lives in Ohio. So in other words, irrespective means that it doesn't matter whether the person moves. Ohio law applies regardless of where if the person lives or moves from Ohio. So hypothetically, this is and I know this is not the case. Hypothetically, if Flaherty had been a California resident at the time of the signing of this employment agreement, and Flaherty had always lived in California, and the intent was that Flaherty work in California, would Ohio law still apply in your view? Yes. And the reason why is because even when they signed the agreement, at that time, he lived in Arizona. But in any they agreed that Ohio law would apply. So if you know, this case, suppose they'd agreed that Alaska law would apply, would would he still be bound in my hypo where he's a California person working in California with an Ohio company, but somehow or rather, the forum says, Alaska law applies, would Alaska law apply then? Well, Your Honor, I hadn't thought about that hypothetical. I know that if you're wearing the forum states, you would apply Ohio's choice of conflict laws. And Ohio does enforce the choice of law language that's in the contract, unless the limited exception and section 187 to would apply and we'd have to go to 187. Yeah, and 187 to what what this court held in stone surgical, which is a published opinion, as well as downlight case. In both of those cases, the court looked at 187 to and said, it's a limited exception, and that the forum states has an interest in protecting one of its businesses that's competing in the global economy. So in this case, Ohio being a forum state has a legitimate interest in protecting semen corp from operating in the global economy. And what the court found was that the employees interest was not materially greater than the forum states interest in protecting one of his business. And that was held in in downlight, I'm sorry, that was held in the stone surgical case, which involved Michigan law, but it was a restatement that they were interpreting. And then it was applied again in the downlight case, dealing with Ohio law and a California resident. So those cases, do those cases say that it doesn't matter at all what the facts are, as long as it's a company that's based in the forum state? Well, I mean, I think the facts always matter to some extent, but it does say it does, it is a comparison between the forum states interest versus the employee where the employee resides interest. And you have to show that it was materially greater. And so what those cases stand for essentially is that the forum states interest in protecting one of its own businesses is legitimate interest, and that the employee's interest is not materially greater. Well, what if California, you know, California wants to protect its employees, you're saying because we look at the choice of law rule of the forum state, we can put a heavier weight on the forum states interest in protecting its citizen, i.e. the company versus California's interest in protecting the employee. Right. And that's under that's under Ohio's choice of law rules, they enforce the choice of law clause. And so the only way that that would not be enforced is the if the re-statement test set forth in 1872, which is the only test that they're arguing here. And that's a limited exception that requires that the employee state have a materially greater interest than the forum state. And in Stone Surgical, as well as in the downlight case, the court found that it was not materially greater. Now, you know, the one thing I want to point out, and we point this out in our brief, is that even if there was no choice of law clause, it's not at all clear that California law would apply the when you're looking at the six factors. And this, again, you don't have to reach this question, because there is a choice of law clause. But just for the sake of argument, when you're looking at the place of performance, the law says, do you look at the place of performance at the parties intended at the time they entered into the agreement? The time they entered into the agreement, the district court found, and this is specifically on page 10 of their opinion, that he intended to reside in Arizona, and that that was the place of performance, and that would ultimately then be the place of performance. And we cite to a case in our in our briefs, in which the fact that an employee moves later, doesn't change that fact. Your friend on the other side had responded to my question by saying California was always the well, you know, again, that's counter to what the district court found. And that's on page 10. On the district court's opinion. She found that he was he had no plans to move there. And if you read the testimony in the record, there's actually conflicting testimony on that question. Siemens witnesses said that they did not they always discussed, you know, whether he could operate from his base in Arizona. And that was the discussion at that point in time. It is place of performance, the same as residents. He was managing a 14 state region, but he was going to be managing that from his home in Arizona. So in that regard, we would say that, you know, essentially that that place of performance would have been managing a 14 state region from his home in Arizona. I'm talking about issues that we don't need to reach. I want to ask you whether there's any point to our looking at the tortious interference of the contract claim, which is a small part of your briefing and the other side's briefing, I believe. And I'm trying to see how it's at all relevant, given that this is a preliminary injunction appeal. And there's no injunctive relief with respect to that claim. Well, your honor, can we just set that up? Can we just set that aside? I do think that it that the court does not need to reach that question. But the reason for that is because when the court, the district court looked at the likelihood of success on the merits, she first looked at the breach of contract claim and found that we were likely to succeed on the merits. She also found that we relied on merits on the misappropriation of trade secrets claim. And they don't. Right. But that's not that's not before. And they do not challenge the finding. Not asking whether you challenge it or not. I'm saying it's just simply not before us because this is an injunctive appeal. Right. This appeal only deals with preliminary. It's relevant to the first preliminary injunction with respect to one of the claims where injunctive relief is sought. That's my question. I see your honor. I think it it comes into play just in terms the likelihood of success on the merits. But I agree that the tortious interference. Yeah, that's where I'm having a hard time seeing how it's related to likelihood of success on the merits because it's not related to the likelihood of success on the merits with respect to a request for equitable relief. Or is it? I see I see your point, your honor, because I think that the court primarily district court primarily relied upon the breach of contract and the misappropriation of trade secrets claims as the likelihood of success on the merits that justified the injunction. She did add that we also were likely to succeed on the on the tortious interference claim. And so but we don't need to reach that. I agree because they don't they do not challenge. All right. That's why I'm asking both sides that you say we don't need to reach this because they're not challenging the finding that it was likely to succeed on the merits of misappropriations claim. And that alone would justify the injunction. So, your honor, we do submit that this is based upon factual findings that subject to a clear air standard and based upon the district court's factual findings. We do not believe that they've carried their burden here to establish that the district court abuses discretion. We asked the court to affirm the district court's injunction. And thank you for the time to talk. Thank you. Time for rebuttal. Thank you. Uh, your honors, the district court simply misapplied the law under the facts it found. The plaintiff appellee wants you to believe that the decision and downlight controls, but downlights distinguishable. The restrictive covenants that issue and downlight appeared in a shareholder agreement concerning ownership and governance of an Ohio corporation, and the purpose of which was to protect the shareholders of an Ohio corporate close corporation. The court and downlight held that Ohio's interest was the protection of a closely held business operating in a global economy. And the district court in that case observed that substantial performance in the shareholder agreement likely occurred in Ohio. Here, the purpose of the employment agreement was Mr. Flaherty's employment by semen, a personal services contract, not a contract for the protection of shareholders. And downlight the shareholder agreement was entered into after a year of drafting discussions and meetings. Here, the employment agreement was dumped on Mr. Flaherty after he already quit his prior job. Furthermore, the choice of law provision in the shareholder agreement and downlight not only clearly chose Ohio law, but also specifically referred to Ohio corporation law. It was clear and unequivocal in choosing Ohio law here. Not so much. Unlike downlight Ohio's interest at stake in this case is not protection of shareholders, but a generalized interest in freedom of contract or in protectionism of Ohio businesses. In the circumstances of restrictive covenants, freedom of contract or the general interest in protecting Ohio businesses would mean employers could impose whatever restrictive covenants they could negotiate. But Ohio recognizes a competing generalized interest that restraints in trade are disfavored and thus restrictive covenants are governed by a general reasonableness standard. I guess you could say that as compared to Ohio, I'm sorry, as compared to California's bedrock policy, Ohio's interest is equivocal and varying. Under these circumstances, California's interest is materially greater. The court's decision in Stone Surgical is also distinguishable. Unlike Stone, where the court noted the absence of interest in the dispute on behalf of Mr Flaherty, we've explained why California's interest is materially greater than Ohio's. Your Honor's the House sample and district court decisions from this circuit cited in our briefs are more closely aligned with this case. Your Honor, uh, Judge Moore, you raise the issue about Alaska. Um, Alaska wouldn't apply because in your hypothetical, because Alaska would have had no substantial relationship to the agreement here. The reason why the parties had a relationship and the employment agreement existed was focused on California. Thank you. Thank you both for your argument and the case will be submitted.